

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

```
------------------------------------------x
SAMUEL HILDENBRAND On Behalf of          :   Civil Action No.  07-1886 (JAG)
Himself and All Others Similarly Situated, :
                                         :   COMPLAINT FOR VIOLATIONS OF
                         Plaintiff,      :   FEDERAL SECURITIES LAWS
                                         :
          vs.                            :   DEMAND FOR JURY TRIAL
                                         :
W HOLDING COMPANY, INC., FRANK C.        :
STIPES, RICARDO HERNANDEZ, FREDDY        :
PEREZ MALDONADO, NORBERTO                :
RIVERA, WESTERNBANK PUERTO RICO,         :
and JOSE M. BIAGGI,                      :
                                         :
                         Defendants.     :
------------------------------------------x
```

RECEIVED & FILED
2007 SEP 21  PM 4: 54
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.



## NATURE OF THE ACTION

1.      This is a federal class action on behalf of purchasers of the publicly traded securities of W Holding Company, Inc. ("W Holding" or the "Company") between April 24, 2006 and June 26, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act.

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District and W Holding conducts business in this District.

5.      In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff Samuel Hildenbrand, as set forth in the accompanying certification and incorporated by reference herein, purchased publicly traded securities of W Holding at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant W Holding is a corporation organized under the laws of Puerto Rico with its principal executive offices located at 19 West McKinley Street, Mayaguez, Puerto Rico 00681.

- 1 -

W Holding operates as the holding company for Westernbank, a commercial bank operating in Puerto Rico which offers an array of business and consumer financial products and services, including banking, trust and brokerage services.

8.     Defendant Frank C. Stipes ("Stipes") was, throughout the Class Period, W Holding's Chief Executive Officer ("CEO") and the Board Chairman of both the Company and Westernbank. On March 29, 2007, Stipes also assumed the duties of President and CEO of Westernbank. During the Class Period, Stipes signed and verified the Company's false and misleading reports filed with the SEC. From 2003 through 2006, Stipes reaped more than $4.6 million in bonuses, which were paid based on the "perception" that the Company's reported earnings were fairly stated.

9.     Defendant Ricardo Hernandez ("Hernandez") was, from the inception the Class Period, W Holding's Corporate Comptroller. In July 2005, Hernandez was promoted to the position of Chief Financial Officer ("CFO"). During the Class Period, Hernandez signed and/or assisted in the preparation of the Company's false and misleading reports filed with the SEC. Effective June 13, 2006, Hernandez "resigned" from his position as CFO to "spend more time with his family and pursue other personal interests." From 2003 through 2006, Hernandez reaped approximately $1.8 million in bonuses, which were paid based on the "perception" that the Company's reported earnings were fairly stated.

10.     Defendant Freddy Perez Maldonado ("Maldonado") was W Holding's CFO until July of 2005, when he was promoted to the position of President and Chief Investments Officer. During the Class Period, Maldonado signed and verified the Company's false and misleading reports filed

with the SEC. From 2003 through 2005, Maldonado reaped approximately $2.3 million in bonuses, which were paid based on the "perception" that the Company's reported earnings were fairly stated.[1]

11.  Defendant Norberto Rivera ("Rivera"), Vice President and Westernbank Comptroller, was promoted to the position of the Company's Chief Accounting Officer ("CAO") and Comptroller on June 14, 2006. During the Class Period, Rivera signed and/or assisted in the preparation of the Company's false and misleading reports filed with the SEC. During 2006, Rivera received a $166,000 bonus, which was paid based on the "perception" that the Company's reported earnings were fairly stated.[2]

12.  Defendant Westernbank is the Company's wholly-owned commercial bank subsidiary. Pursuant to W Holding's filings with the SEC, the Company's business is conducted primarily through Westernbank. Defendant Westernbank is primarily liable for the violations of law alleged herein as it was a direct and knowing source of W Holding's materially false and misleading statements during the Class Period.

13.  Defendant Jose M. Biaggi ("Biaggi") was, from July 12, 2005 until he resigned on March 29, 2007, the President and CEO of Westernbank. Biaggi assisted in the preparation of the Company's false and misleading reports filed with the SEC and is primarily liable for the violations of law alleged herein as he was a direct and knowing source of W Holding's materially false and misleading statements during the Class Period. During 2005 and 2006, Biaggi received bonuses of approximately $1.0 million, which were paid based on the "perception" that the Company's reported earnings were fairly stated.

---

[1]  W Holding did not disclose the amount of Defendant Maldonado's 2006 bonus.
[2]  W Holding did not disclose the amount of Defendant Rivera's bonuses prior to 2006.

14.     The Defendants named in ¶¶8-13 above are referred to herein as the "Individual Defendants." During the Class Period, the Individual Defendants, as senior executive officers and/or directors of W Holding, were privy to confidential and proprietary information concerning W Holding, its operations, finances, financial condition and present and future business prospects. The Individual Defendants also had access to material adverse non-public information concerning W Holding, as discussed in detail below. Because of their positions with W Holding, the Individual Defendants had access to non-public information about its business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

15.     The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of Section 20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of W Holding's business.

16.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading

prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

17.    As senior executive officers and/or directors and as controlling persons of a publicly traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the New York Stock Exchange ("NYSE") and governed by the federal securities laws, the Individual Defendants had a duty to disseminate promptly accurate and truthful information with respect to W Holding's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, to correct any previously issued statements that had become materially misleading or untrue, so that the market price of W Holding's securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

18.    The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct which operated as a fraud or deceit on purchasers of W Holding publicly traded securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding W Holding's business, operations and management and the intrinsic value of W Holding securities; and (ii) caused Plaintiff and members of the Class to purchase W Holding publicly traded securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

19.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the securities of W Holding between April 24, 2006 and June 26, 2007, inclusive, and who were damaged thereby

- 5 -

(the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

20.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, W Holding stock was actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by W Holding or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

21.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

22.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

23.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of W Holding;

(c)     whether the prices of W Holding's publicly traded securities were artificially inflated during the Class Period; and

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

24.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## Materially False and Misleading
## Statements Issued During the Class Period

25.     Defendant W Holding operates as the holding company for Westernbank, a commercial bank operating in Puerto Rico, which offers an array of business and consumer financial products and services including banking, trust and brokerage services.

26.     As detailed further herein, throughout the Class Period, W Holding reported artificially inflated financial results due to an improper accounting scheme. In particular, W Holding failed to timely write-down loans to Inyx, Inc. ("Inyx"), despite the fact that Defendants knew that the prospect of being paid back was not likely. By failing to properly write-down the Inyx loans, W Holding's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP") and, therefore, were materially false and misleading.

27.     The Class Period commences on April 24, 2006. On that date, W Holding filed its Form 10-K for the year ended December 31, 2005 with the SEC, which was signed by Defendants Stipes, Maldonado and Hernandez (the "2005 Form 10-K"). The 2005 Form 10-K included W Holding's financial statements for the year ended December 31, 2005, which were represented to

- 7 -

have been presented in conformity with U.S. GAAP. In addition, the 2005 Form 10-K represented

that:

> • The accounting and reporting policies of the Company conform to accounting principles generally accepted in the United States of America and banking industry practices.

> • *The allowance for loan losses is based on ongoing quarterly assessments* of the probable estimated losses inherent in the loan portfolio. The Company follows a systematic methodology to establish and evaluate the adequacy of the allowance for loan losses. This methodology consists of several key elements. *Larger commercial and construction loans that exhibit probable or observed credit weaknesses are subject to individual review.* Where appropriate, allowances are allocated to individual loans based on management's estimate of the borrower's ability to repay the loan given the availability of collateral, other sources of cash flow and legal options available to the Company.

> • *Included in the review of individual loans are those that are impaired as provided in Statement of Financial Accounting Standards ("SFAS") No. 114,* Accounting by Creditors for Impairment of a Loan, as amended. Any allowances for impaired loans are measured based on the present value of expected future cash flows discounted at the loans' effective interest rate or fair value of the underlying collateral. *Commercial business, commercial real estate and construction loans, exceeding $500,000, are individually evaluated for impairment.* Other loans are evaluated in homogeneous groups and collectively evaluated for impairment. Loans that are recorded at fair value or at the lower of cost or fair value are not evaluated for impairment. Impaired loans for which the discounted cash flows or collateral value exceeds its carrying value do not require an allowance. The Company evaluates the collectibility of both principal and interest when assessing the need for loss accrual. [Emphasis added.]

28.     On May 3, 2006, W Holding issued a press release announcing its financial results for

its first quarter, the period ending March 31, 2006. For the first quarter, the Company reported net

income of $35.4 million or $0.16 per share. With respect to loan delinquencies, the press release

stated, in pertinent part, as follows:

> Net loans charged-off to average total loans ratio improved by 4 basis points during the first quarter of 2006, to 0.16% from 0.20% for the same quarter in year 2005 and by 11 basis points from 0.27% reported for the year ended December 31, 2005.

> W Holding's combined delinquency on all loan portfolios for the categories of 60 days and over at March 31, 2006, was 0.65%, below the Company's benchmark of 1%. On a linked quarter comparison, the Company's combined delinquency on all

portfolios for the categories of 60 days and over improved by 7 basis points, from 0.72% at December 31, 2005.

The delinquency ratio on the commercial real estate-mortgage and commercial, industrial and agricultural loan ("Commercial and C&I") and construction loan portfolios for the categories of 60 days and over was 0.66% (less than 1%) at March 31, 2006. On a linked quarter comparison, the Company's delinquency ratio on the commercial loan portfolio for the categories of 60 days and over improved 19 basis points, from 0.85% at December 31, 2005.

29.    On or about May 10, 2006, W Holding filed its March 31, 2006 Form 10-Q with the SEC, which was signed by Defendants Stipes and Hernandez and repeated W Holding's previously announced financial results for the quarter. The Form 10-Q included W Holding's financial statements for the quarter ended March 31, 2006, which were represented to have been presented in conformity with U.S. GAAP. In addition, the Form 10-Q represented that:

> •    *The accounting and reporting policies of the Company conform to accounting principles generally accepted in the United States of America* ("GAAP") and banking industry practices. *The accompanying unaudited Condensed Consolidated Financial Statements have been prepared pursuant to the rules and regulations of the Securities and Exchange Commission ("SEC")*. In the opinion of management, the unaudited Condensed Consolidated Financial Statements include all adjustments (which consist of normal recurring accruals) necessary to present fairly the consolidated financial condition as of March 31, 2006 and December 31, 2005, and the results of operations, changes in stockholders' equity, comprehensive income, and cash flows for the three months ended March 31, 2006 and 2005. All significant intercompany balances and transactions have been eliminated in the accompanying unaudited condensed consolidated financial statements. Certain information and footnote disclosures normally included in financial statements prepared in accordance with GAAP have been condensed or omitted pursuant to SEC rules and regulations. *Management believes that the disclosures made are adequate to make the information presented not misleading.*

> •    *Loans are classified as impaired or not impaired in accordance with SFAS No. 114*. A loan is impaired when, based on current information and events, it is probable that Westernbank will be unable to collect the scheduled payments of principal or interest when due, according to the contractual terms of the agreement.

> •    *Westernbank measures the impairment of a loan based on the present value of expected future cash flows discounted at the loan's effective interest rate, or as a practical expedient, at the observable market price of the loan or the fair value of the collateral, if the loan is collateral dependent.*

> • **Significant loans (those exceeding $500,000) are individually evaluated for impairment.** Large groups of small balance, homogeneous loans are collectively evaluated for impairment; loans that are recorded at fair value or at the lower of cost or market are not evaluated for impairment. The portfolios of mortgage and consumer loans are considered homogeneous and are evaluated collectively for impairment. [Emphasis added.]

30.     On June 13, 2006, W Holding issued a press release announcing that its CFO, Defendant Hernandez, had "resigned to spend more time with his family and pursue personal interests." In addition, the Company announced that Defendant Rivera was appointed to the position of CAO.

31.     On June 30, 2006, W Holding issued a press release announcing that it acquired certain rights from Doral Financial Corporation to perfect its previously acquired pools of mortgage loans.

32.     On July 20, 2006, W Holding issued a press release announcing its financial results for its second quarter of 2006, the period ending June 30, 2006. For the second quarter, the Company reported net income of $21.7 million or $0.08 per share.

33.     On or about August 17, 2006, W Holding filed its June 30, 2006 Form 10-Q with the SEC, which was signed by Defendants Stipes and Rivera and repeated W Holding's previously announced financial results for the quarter. The Form 10-Q included W Holding's financial statements for the quarter ended June 30, 2006, which were represented to have been presented in conformity with U.S. GAAP. In addition, the Form 10-Q represented the following:

> • **The accounting and reporting policies of the Company conform to accounting principles generally accepted in the United States of America** ("GAAP") and banking industry practices. **The accompanying unaudited Condensed Consolidated Financial Statements have been prepared pursuant to the rules and regulations of the Securities and Exchange Commission ("SEC")**. In the opinion of management, the unaudited Condensed Consolidated Financial Statements include all adjustments (which consist of normal recurring accruals) necessary to present fairly the consolidated financial condition as of June 30, 2006 and December 31, 2005, the results of operations for the three and six months ended June 30, 2006 and 2005, and changes in stockholders' equity, comprehensive income, and cash

flows for the six months ended June 30, 2006 and 2005. All significant intercompany balances and transactions have been eliminated in the accompanying unaudited condensed consolidated financial statements. Certain information and footnote disclosures normally included in financial statements prepared in accordance with GAAP have been condensed or omitted pursuant to SEC rules and regulations. *Management believes that the disclosures made are adequate to make the information presented not misleading.*

• *Loans are classified as impaired or not impaired in accordance with SFAS No. 114.* A loan is impaired when, based on current information and events, it is probable that Westernbank will be unable to collect the scheduled payments of principal or interest when due, according to the contractual terms of the agreement.

• *Westernbank measures the impairment of a loan based on the present value of expected future cash flows discounted at the loan's effective interest rate, or* as a practical expedient, at the observable market price of the loan or *the fair value of the collateral, if the loan is collateral dependent.*

• *Significant loans (those exceeding $500,000) are individually evaluated for impairment.* Large groups of small balance, homogeneous loans are collectively evaluated for impairment; loans that are recorded at fair value or at the lower of cost or market are not evaluated for impairment. The portfolios of mortgage and consumer loans are considered homogeneous and are evaluated collectively for impairment. [Emphasis added.]

34.    On November 8, 2006, W Holding issued a press release announcing its financial results for the third quarter of 2006, the period ending September 30, 2006. For the third quarter, the Company reported net income of $25.5 million or $0.10 per share.

35.    On or about November 9, 2006, W Holding filed its September 30, 2006 Form 10-Q with the SEC, which was signed by Defendants Stipes and Rivera and repeated W Holding's previously announced financial results for the quarter. The Form 10-Q included W Holding's financial statements for the quarter ended September 30, 2006, which were represented to have been presented in conformity with U.S. GAAP. In addition, the Form 10-Q represented the following:

• *The accounting and reporting policies of the Company conform to accounting principles generally accepted in the United States of America* ("GAAP") and banking industry practices. *The accompanying unaudited Condensed Consolidated Financial Statements have been prepared pursuant to the rules and regulations of the Securities and Exchange Commission ("SEC").* In the opinion of management, the unaudited Condensed Consolidated Financial Statements

include all adjustments (which consist of normal recurring accruals) necessary to present fairly the consolidated financial condition as of September 30, 2006 and December 31, 2005, the consolidated results of operations for the three and nine months ended September 30, 2006 and 2005, and the consolidated changes in stockholders' equity, comprehensive income, and cash flows for the nine months ended September 30, 2006 and 2005.  All significant intercompany balances and transactions have been eliminated in the accompanying unaudited condensed consolidated financial statements.  Certain information and footnote disclosures normally included in financial statements prepared in accordance with GAAP have been condensed or omitted pursuant to SEC rules and regulations.  Management believes that the disclosures made are adequate to make the information presented not misleading.

•       *Loans are classified as impaired or not impaired in accordance with SFAS No. 114.*  A loan is impaired when, based on current information and events, it is probable that Westernbank will be unable to collect the scheduled payments of principal or interest when due, according to the contractual terms of the agreement.

•       *Westernbank measures the impairment of a loan based on the present value of expected future cash flows discounted at the loan's effective interest rate, or* as a practical expedient, at the observable market price of the loan or *the fair value of the collateral, if the loan is collateral dependent.*

•       *Significant loans (those exceeding $500,000) are individually evaluated for impairment.*  Large groups of small balance, homogeneous loans are collectively evaluated for impairment; loans that are recorded at fair value or at the lower of cost or market are not evaluated for impairment.  The portfolios of mortgage and consumer loans are considered homogeneous and are evaluated collectively for impairment.  [Emphasis added.]

36.    On January 30, 2007, W Holding issued a press release announcing its financial results for its fourth quarter and year ended December 31, 2006.  The press release characterized W Holding's asset quality as "strong," stating, in pertinent part, as follows:

W Holding's asset quality continues to be strong in spite of the Company's continued loan portfolio growth, as measured by the Company's ratios of net loan charge-offs to average total loans, provision for loan losses to net loans charged-off and reserves to total loans.

37.    On or about February 27, 2007, W Holding filed its December 31, 2006 Form 10-K with the SEC, which was signed by Defendants Stipes, Maldonado and Rivera and repeated W Holding's previously announced financial results for the quarter (the "2006 Form 10-K").  The 2006

Form 10-K included W Holding's financial statements for the year ended December 31, 2006, which

were represented to have been presented in conformity with U.S. GAAP. In addition, the 2006 Form

10-K represented the following:

> •   *The accounting and reporting policies of the Company conform to accounting principles generally accepted in the United States of America* ("GAAP") and banking industry practices.

> •   *The allowance for loan losses is based on ongoing quarterly assessments* of the probable estimated losses inherent in the loan portfolio. The Company follows a systematic methodology to establish and evaluate the adequacy of the allowance for loan losses. This methodology consists of several key elements. *Larger commercial and construction loans that exhibit probable or observed credit weaknesses are subject to individual review.* Where appropriate, allowances are allocated to individual loans based on management's estimate of the borrower's ability to repay the loan given the availability of collateral, other sources of cash flow and legal options available to the Company.

> •   *Included in the review of individual loans are those that are impaired as provided in Statement of Financial Accounting Standards ("SFAS") No. 114,* Accounting by Creditors for Impairment of a Loan, as amended. Any allowances for impaired loans are measured based on the present value of expected future cash flows discounted at the loans' effective interest rate or fair value of the underlying collateral. *Commercial business, commercial real estate and construction loans, exceeding $500,000, are individually evaluated for impairment.* Other loans are evaluated in homogeneous groups and collectively evaluated for impairment. Loans that are recorded at fair value or at the lower of cost or fair value are not evaluated for impairment. Impaired loans for which the discounted cash flows or collateral value exceeds its carrying value do not require an allowance. The Company evaluates the collectibility of both principal and interest when assessing the need for loss accrual. [Emphasis added.]

38.   On March 29, 2007, W Holding issued a press release announcing that Defendant

Biaggi resigned from his position as President and CEO of Westernbank.

39.   On May 1, 2007, W Holding issued a press release announcing its financial results for

its first quarter of 2007, the period ending March 31, 2007. For the first quarter, the Company

reported net income of $28.7 million or $0.12 per share.

40.   On May 8, 2007, W Holding filed its March 31, 2007 Form 10-Q with the SEC,

which was signed by Defendants Stipes and Rivera and repeated W Holding's previously announced

financial results for the quarter. The Form 10-Q included W Holding's financial statements for the

quarter ended March 31, 2007, which were represented to have been presented in conformity with

U.S. GAAP. In addition, the Form 10-Q contained the following false statements:

> • ***The accounting and reporting policies of the Company conform to accounting principles generally accepted in the United States of America*** ("GAAP") and banking industry practices. ***The accompanying unaudited Condensed Consolidated Financial Statements have been prepared pursuant to the rules and regulations of the Securities and Exchange Commission ("SEC").*** In the opinion of management, the unaudited Condensed Consolidated Financial Statements include all adjustments (which consist of normal recurring accruals) necessary to present fairly the consolidated financial condition as of March 31, 2007 and December 31, 2006, and the consolidated results of operations, changes in stockholders' equity, comprehensive income, and cash flows for the three months ended March 31, 2007 and 2006. All significant intercompany balances and transactions have been eliminated in the accompanying unaudited condensed consolidated financial statements. Certain information and footnote disclosures normally included in financial statements prepared in accordance with GAAP have been condensed or omitted pursuant to SEC rules and regulations. ***Management believes that the disclosures made are adequate to make the information presented not misleading.***

> • ***Loans are classified as impaired or not impaired in accordance with SFAS No. 114.*** A loan is impaired when, based on current information and events, it is probable that Westernbank will be unable to collect the scheduled payments of principal or interest when due, according to the contractual terms of the agreement.

> • ***Westernbank measures the impairment of a loan based on the present value of expected future cash flows discounted at the loan's effective interest rate, or*** as a practical expedient, at the observable market price of the loan or ***the fair value of the collateral, if the loan is collateral dependent.***

> • ***Significant loans (those exceeding $500,000) are individually evaluated for impairment.*** Large groups of small balance, homogeneous loans are collectively evaluated for impairment; loans that are recorded at fair value or at the lower of cost or market are not evaluated for impairment. The portfolios of mortgage and consumer loans are considered homogeneous and are evaluated collectively for impairment. [Emphasis added.]

41. The statements referenced above in ¶¶27-29, 32-37, 39 and 40 were each materially

false and misleading because they failed to disclose and misrepresented the following material

adverse facts:

> (a)   that the Company's financial results during the Class Period were artificially inflated due to the Company's failure to write-down the Inyx loans, which were impaired. W Holding has now admitted that it is not likely to collect on the Inyx loans and that it will be toting a charge of at least $80 million.

> (b)   that the Company improperly delayed the recognition of its impaired assets in order to inflate its reported income and asset quality;

> (c)   that the "regulatory capital" the Company claimed throughout the Class Period was similarly overstated; and

> (d)   the Company's "book value" per share was materially overstated; and as a result of (a)-(c) above, and as more fully described in ¶¶45-49 below, the Company's published financial statements violated U.S. GAAP.

42.    Then, on June 26, 2007, W Holding filed a Form 8-K with the SEC, which reported that the Company had determined that "one of its larger asset-based loans" was impaired. The Form 8-K stated, in pertinent part, as follows:

> On June 19, 2007, *W Holding Company, Inc.*, the bank holding company of Westernbank Puerto Rico, *determined that one of its larger asset-based loans originated by its asset-based lending division is impaired. The Company also determined there is a significant collateral deficiency with respect to this impaired loan.*

> At this time, the Company is unable to make a determination as to the amount or range of amounts of any collateral deficiency, impairment charge or future cash expenditures with respect to such charge. However, *on a preliminary basis, management believes the collateral deficiency to be <u>at least $80 million</u>*. The Company is currently in the process of evaluating the loan, the existing and possible potential new collateral and the loan guaranty to determine the financial impact, if any, of this loan impairment.

> In reviewing the circumstances of the impairment discussed above under Item 2.06, *the Audit Committee* of the Board of Directors *has decided to have an independent firm* retained to *review* the impaired loan as well as *the complete asset-based lending portfolio and the asset based lending division's systems of internal controls*. [Emphasis added.]

- 15 -

43.     In response to the Company's announcement, the price of W Holding stock dropped from $5.01 per share to $3.14 per share on extremely heavy trading volume and continued to decline, falling to $2.64 per share on June 29, 2007.

44.     On June 27, 2007, *American Banker* reported:

W Holding Co. disclosed problems with one of its large corporate loans Tuesday, reinforcing credit quality's place at the top of a long list of concerns besetting Puerto Rico's banks.

Virtually all of the island's banking companies have reported credit deterioration in recent quarters, after turmoil in 2005 caused by massive earnings restatements by three companies that had incorrectly accounted for interest-only securities. Those problems are still not resolved, and a recession in Puerto Rico has put additional stress on consumer portfolios.

The troubles appear to be spreading to commercial lending. W Holding, which has $17.5 billion of assets, said in a filing with the Securities and Exchange Commission that *one of its "larger" asset-based loans is impaired* - a*nd that the loan has "a significant collateral deficiency."*

The Mayaguez company said it has engaged an independent firm to review its entire $1.4 billion portfolio of asset-based loans.

*Bain Slack, an analyst at KBW Inc.'s Keefe, Bruyette & Woods Inc., said the portfolio review could prove more serious than the current impairment.*

*The review "implies that there is more to come," Mr. Slack said. "It's a serious move to have to bring in an independent firm to review your system of internal controls for a whole department."*

First-quarter interest income at W Holding's asset-based division, Westernbank Business Credit, rose 19% from a year earlier, to $27.4 million. The division's portfolio constituted 15.4% of the company's $9.1 billion loan book, up from about 11% a year earlier.

*Anthony Polini, an analyst with Soleil Securities Group Inc., downgraded W Holding to "sell" from "hold" on Tuesday.*

"Loan growth has remained at very high levels throughout the recent economic downturn in Puerto Rico, even as problem assets continue to rise," Mr. Polini wrote in a report explaining the downgrade. "The company's growth appears to be unbridled and *the company's risk management capabilities are suspect, in our opinion.*"

- 16 -

*W Holding's shares opened sharply lower Tuesday morning and closed down 37.3% on volume almost 12 times its average*. Shares of other large Puerto Rican lenders also declined: Popular Inc. fell 2.5%, and First BanCorp fell 2.4%.

Though W Holding is generally thought to be one of the most aggressive lenders on the island, investors seem to be betting that other companies will have similar troubles.

Popular, too, "will have credit quality weaknesses - we've already seen that in the past couple of quarters," Mr. Slack said. But he said that Popular, as the island's largest banking company, is "in a better position to handle it," because it has better capital ratios, is more diversified, and has had slower growth in commercial lending.

First BanCorp, which along with Doral Financial Corp. and R&G Financial Corp. was at the epicenter of the accounting snafu, is a wild card: It reported 2005 earnings this year but has not provided earnings information for 2006 or 2007.

"We need to see the updated financials to see how that's going to play out, but I would imagine they are challenged," said Mr. Slack, who along with Mr. Polini is one of the few research analysts still covering the island's banks.

W Holding's filing raised more questions than it answered.

The company was "unable to make a determination as to the amount or range of amounts of any collateral deficiency, impairment charge, or future cash expenditures with respect to such charge," it said. "However, on a preliminary basis, management believes the collateral deficiency to be at least $80 million."

W Holding did not disclose the borrower, the size of the loan, the type of collateral, or whether it had reserved for loss. A spokesman did not return phone calls seeking comment. [Emphasis added.]

## W Holding's False Financial Statements

45.     W Holding's issued financial statements were presented in violation of GAAP, including Statement of Financial Accounting Standards ("SFAS") No. 114, and were materially false and misleading due to its improper accounting for impaired assets.

46.     GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practices at a particular time. Regulation S-X, 17 C.F.R. §210.4-01(a)(1), states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate.

- 17 -

Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosures which would be duplicative of disclosures accompanying annual financial statements.

47.     Pursuant to SFAS No. 114, a loan is impaired when, based on current information and events, it is probable that a creditor will be unable to collect all amounts due according to the contractual terms of the loan agreement and that a creditor should apply its normal loan review procedures in making the judgment about whether it is probable that it will be unable to collect all amounts due according to the contractual terms of a loan.

48.     The Individual Defendants had the responsibility to select GAAP which were appropriate to reflect W Holding's business activities in accordance with Section 13 of the Exchange Act. In addition to violating the provisions of SFAS No. 114, W Holding presented its financial statements during the Class Period in a manner which also violated at least the following provisions of GAAP:

(a)     The concept that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions (FASB Statement of Concepts ("Concepts Statement") No. 1, ¶34);

(b)     The concept that financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and the effects of transactions, events and circumstances that change resources and claims to those resources (Concepts Statement No. 1, ¶40);

(c)     The concept that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it. To the extent that management offers securities of

the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general (Concepts Statement No. 1, ¶50);

        (d)    The concept that financial reporting should provide information about an enterprise's financial performance during a period. Investors and creditors often use information about the past to help in assessing the prospects of an enterprise. Thus, although investment and credit decisions reflect investors' expectations about future enterprise performance, those expectations are commonly based at least partly on evaluations of past enterprise performance (Concepts Statement No. 1, ¶42);

        (e)    The concept of completeness, which means that nothing is left out of the information that may be necessary to ensure that it validly represents underlying events and conditions (Concepts Statement No. 2, ¶79); and

        (f)    The concept that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered. The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent (Concepts Statement No. 2, ¶¶95, 97).

    49.    In failing to file financial statements with the SEC which conformed to the requirements of GAAP, W Holding disseminated financial statements that were presumptively misleading and inaccurate. The Company's Class Period Forms 10-K and 10-Q filed with the SEC were also materially false and misleading in that they failed to disclose known trends, demands, commitments, events, and uncertainties which were reasonably likely to have a material adverse effect on the Company's liquidity, net sales, revenues and income from continuing operations, as required by Item 303 of Regulation S-K.

## Additional Scienter Allegations

50.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding W Holding, their control over, and/or receipt and/or modification of W Holding's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning W Holding, participated in the fraudulent scheme alleged herein.

51.     Defendants were further motivated to engage in this course of conduct in order to facilitate W Holding's series of preferred stock offerings during the Class Period, those of which provided the Company with the equity capital necessary to fuel its growth.

## Loss Causation/Economic Loss

52.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct which artificially inflated W Holding's stock price and operated as a fraud or deceit on Class Period purchasers of W Holding stock by misrepresenting the Company's business success and future business prospects.  Defendants achieved this façade of success, growth and strong future business prospects by misrepresenting the Company's financial statements, earnings and prospects.  Later, however, when Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, W Holding stock fell precipitously as the prior artificial inflation came out of W Holding's stock price.  As a result of their

purchases of W Holding stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

53.    The economic loss, *i.e.*, damages, suffered by Plaintiff and other members of the Class was a direct result of Defendants' fraudulent scheme to artificially inflate W Holding's stock price and the subsequent significant decline in the value of W Holding's stock when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

### Applicability of Presumption of Reliance
### Fraud on the Market Doctrine

54.    The markets for W Holding's common stock were open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and omissions of material fact, W Holding's publicly traded securities traded at inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired W Holding publicly traded securities relying upon the integrity of the market price of W Holding publicly traded securities and market information relating to W Holding, and have been damaged thereby.

55.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of W Holding's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

56.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading

statements about W Holding's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of W Holding and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

57.    At all relevant times, the market for W Holding securities was an efficient market for the following reasons, among others:

(a)    W Holding common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    as a regulated issuer, W Holding filed periodic public reports with the SEC and the NYSE;

(c)    W Holding regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    W Holding was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

58.    As a result of the foregoing, the market for W Holding common stock promptly digested current information regarding W Holding from all publicly available sources and reflected

such information in the prices of the stock. Under these circumstances, all purchasers of W Holding common stock during the Class Period suffered similar injury through their purchase of W Holding common stock at artificially inflated prices and a presumption of reliance applies.

### No Safe Harbor

59.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors which could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of W Holding who knew that those statements were false when made.

### COUNT I

### Violation of Section 10(b) of
### the Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against All Defendants

60.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.    During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary

- 23 -

in order to make the statements made, in light of the circumstances under which they were made, not misleading.

62.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

63.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for W Holding common stock. Plaintiff and the Class would not have purchased W Holding common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

64.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of W Holding common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of
### the Exchange Act Against the Individual Defendants

65.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66.    The Individual Defendants acted as controlling persons of W Holding within the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of W Holding, and their ownership of W Holding stock, the Individual Defendants had the power and authority to cause W Holding to engage in the wrongful conduct

complained of herein.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: September 20, 2007                THE LAW OFFICE OF ANDRES W. LOPEZ
                                         ANDRES W. LOPEZ, ESQ.


                                         _____
                                             ANDRES W. LOPEZ, ESQ.

                                         207 Del Parque Street, 3rd Floor
                                         San Juan, PR  00912
                                         Telephone:  787/641-4541

COUGHLIN STOIA GELLER RUDMAN &
   ROBBINS LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (Fax)

Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

SAMUEL HILDENBRAND ("Plaintiff") declares:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 6/21/07 | 1,000 | 5.10 |
| | | |
| | | |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| | | |
| | | |
| | | |

5.     Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

6.     The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ____ day of _9/10_ ____, 2007.

_Samuel J. Hildenbrand_
SAMUEL HILDENBRAND

W HOLDING