UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| SAMUEL HIDENBRAND, et al., <br><br> Plaintiffs <br><br> v. <br><br> W HOLDING COMPANY, INC. et al, <br><br> Defendants | CIVIL NO. 07-1886 (JAG) |

**SUPPLEMENT TO JOINT CASE MANAGEMENT MEMORANDUM BY THIRD-PARTY PAINTIFF AND CROSS-CLAIMANT JOSE M. BIAGGI LANDRON**

TO THE HONORABLE COURT:

COMES NOW defendant, third part plaintiff and cross-claimant José M. Biaggi Landrón, through the undersigned counsel, in accordance with Rule 26 of the Federal Rules of Civil Procedure, supplement the Joint Case Management Memorandum, Docket No. 119, for the Honorable Court's consideration and approval, pursuant to the Scheduling and Case Management Order dated October 16, 2009 (the "Case Management Order"), Docket No. 98, as follows:

### I. THE PARTIES

1.1   José M. Biaggi Landrón is a citizen of Puerto Rico. Mr. Biaggi was the President of Westernbank, Inc. ("Westernbank"), a subsidiary of WHI from July 12, 2005 to March 29, 2007.

## II.    FACTUAL CONTENTIONS

This suit has been presented as a class action on behalf of all purchasers of the publicly traded securities of W Holding, Inc. (WHI) during the period between April 24, 2006 and June 26, 2007. (Consolidated and Amended Complaint, Docket No. 31, ¶ 1 at p. 1; hereinafter the Amended Complaint) The plaintiffs' allegations purport to rely in WHI's regulatory filings with the Securities and Exchange Commission (SEC). Id, at p.1. Biaggi was the President of Westernbank, Inc. ("Westernbank") a subsidiary of WHI, between July 12, 2005 and March 29, 2007. Those regulatory filings record that Biaggi was not a director, officer, employee or controlling person of WHI at any time during the Class Period. For example, WHI's annual report for the period ended December 31, 2006 shows that Biaggi did not serve WHI in any capacity during the year. Similarly, WHI's proxy statement dated April 9, 2007 records that Biaggi was not a member of WHI's Senior Credit Committee during 2006 and that WHI's Committee never met that year.

The Amended Complaint does not allege that Biaggi signed or prepared any of WHI's regulatory filings, nor does it charge him with the preparation or distribution of any single specific "public statements" which may have been relied upon by members of the plaintiff's class. The Amended Complaint does not allege with particularity that Westernbank's executives responsible for the Business Credit division of Westernbank reported to Biaggi any information about the Inyx fraud or any other matter relevant to the Amended Complaint.

The Amended Complaint's principal promise to this Honorable Court, at ¶ 3 thereof, to the effect that it will detail how each individual Defendant incurred in conduct

actionable under the Securities Exchange Act of 1934, as amended, goes entirely unfulfilled as to Biaggi. The lack of specific allegations as to Biaggi should result in the dismissal with prejudice of the Amended Complaint.

The Amended Complaint avers that Westernbank granted Inyx loan on March 31, 2005. Id p.13 That event occurred prior to Biaggi joining Westernbank as its President, which did not happen until July, 2005. Id ¶ 17 at p. 6

The Amended Complaint does not allege that Biaggi was involved in the administration of the Inyx loan, or even in the direct supervision of such administrations. The Amended Complaint does not allege that any of the three so called "red flags" about the Inyx loan were brought to Biaggi's attention, nor does it allege with particularity that Biaggi had in fact information about the fraud that was being perpetrated by Inyx. In the absence of such allegations of actual knowledge by Biaggi, the allegation that Biaggi perpetrated a fraud against public investors, by not making a timely and proper public disclosure thereof, is a non-sequitur. It is non-sensical to charge a person, in this case Biaggi, with failure to disclose what that person does not know.

### III.   LEGAL CONTENTIONS

In the foregoing specific factual context, the conclusory allegations made against Biaggi, charging him with failure to disclose that the Inyx loan was impaired, do not meet the scienter standard of specificity, see <u>Tellabs, Inc. v. Mabor Insures & Rights Ltd</u>. 127 S.Ct. 2499 at 2511 (2007).  Moreover, it is to be noted that in every single instance in which the Amended Complaint makes a specific reference to public disclosures which in hindsight have proved inaccurate or incorrect , the amended Complaint identifies other persons, not Biaggi, as the signatories or authors thereof and fails to allege with

particularity that the named signatories or authors has knowledge in fact that the information in such disclosures was in any way incorrect.

The Amended Complaint records the fact that on June 26, 2007 WHI filed an 8-K SEC report disclosing that the prior week, on June 19, WHI had "determined that one of its larger asset based loans… is impaired." Nowhere does the Amended Complaint allege with particularity that Biaggi had knowledge in fact of such impairment prior to his departure from Westernbank on March 29, 2007. For that matter, the Amended Complaint does not allege that any of the other individual defendants had knowledge in fact of such impairment prior to May, 2007.

The 8-K SES report dated June 26, 2007 came about as a result of the admission made by the then CFO of Inyx to Mr. Gabriel Montañez in May of 2007 that a substantial portion of the accounts receivable pledged by Inyx to Westernbank would probably not be collected. [Amended Complaint, ¶ 45, at p.17] This is the earliest actual knowledge alleged in the Amended Complaint to have been received by an officer at Westernbank about a possible impairment problem with the Inyx loan. Prior to May of 2007, the Amended Complaint describes a successfully perpetrated fraud by Inyx. Again by May of 2007 Biaggi was no longer at Westernbank.

"[C]onclusory allegations-that defendants 'knew but concealed' some things, or 'knew or were reckless in not knowing' other things-do not satisfy the requirements of Rule 9(b) …are 'so broad and conclusory as to be meaningless.'" In re Sotheby's Holdings, Inc., 2000 WL 1234601 at 8-9 (SDNDY 2000) (quoting Shields v. Citytrust Bancorp, Inc., 25 F3d 1124, 1129 (2d Cir. 1994); Decker v. Massey-Ferguson, Ltd., 681 F2d 111, 119-20 (2d Cir. 1982)).  Accordingly, it is simply inadequate to allege that by

virtue of his positions at Westernbank, Biaggi knew or should have known of facts contradicting the published financial statements, without specifically alleging the facts or identifying specific reports or statements containing contrary facts to which Biaggi had access. These formulaic allegations fail to meet the standards or particularity necessary to establish a strong inference of conscious misbehavior or recklessness.

The allegations of the Amended Complaint against Biaggi do not satisfy the pleading requirement of the Private Securities Litigation Reform Act of 1994, as amended ("PSLRA"). Under that statute each purportedly false statement must be alleged specifically, which the Amended Complaint did not do as to Biaggi.

The amended complaint fails to allege any facts showing that Biaggi had motive to commit fraud.

To adequately plead scienter based on Biaggi's motive to commit fraud, plaintiffs must make particularized factual allegations showing that Biaggi realized "concrete benefits" by virtue of "one or more of the false statements and wrongful disclosures alleged." Faulkner v. Verizon Communications, Inc., 156 F.Supp. 2d 384, 393 (SDNY 2001) (citing Novak, 216 F3d 300 (2 Cir. 2000) Instead, plaintiffs allege a general motive based on defendants' purported "…fraudulent scheme which inflated the company's earning and assets…" (¶2, p.1)

The pleading discussed above carry over to the claims made under Section 20 (a) of the Exchange Act.

Count II of the Amended Complaint

In order to state a claim against Biaggi under Section 20(a), the plaintiffs were required to allege with particularity, among other things, the facts that made Biaggi a

controlling person during the relevant period and the facts that constitute a primary violation of the Exchange Act. As to Biaggi, the Amended Complaint fails to meet both requirements.

First, it is to be noted that the Amended Complaint, at ¶ 17, does not describe Biaggi as a director, officer, or controlling person of WHI, which he was not, as is made palpably clear by the regulatory filings and which the plaintiffs and their counsel allege to have relied in preparing the Amended Complaint. [See Id, at p.1] The general allegation of the Amended Complaint with respect Individual Defendants, to the effect that they were all "officers and/or directors of W Holding" [Id at ¶ 18, at p. 6] are inconsistent with the specific allegation made as to Biaggi. There are no allegations against Biaggi stating facts that would bring him within the definitions of a controlling person. In fact, Biaggi did not hold a position of control over WHI, as is made plain, for example, by the WHI annual report for 2006 which correctly reflects that Biaggi did not hold a single position in WHI.

Specifically, the Amended Complaint is devoid of allegations that Biaggi had actual control over W. Holding Company with respect to the transactions at issue in this case, as is essential to state a claim under Section 20(a). See In re Sotheby's Hldgs., Inc., No. 11 Civ. 1041, 2000 WL 1234601, at 8 (SDNY Aug. 31, 2000) ("Actual control over the wrongdoer and the transactions in question is necessary for control person liability."); In re Livent, Inc. Sec. Litig., 78 FSupp. 2d at 194, 221 (SDNY 1999); In re Blech Sec. Litig., 961 F.Supp. 569, 586 (SDNY 1987).

Plaintiffs' allegations of control are largely predicated upon Biaggi's status within Westernbank during the class period. See Am. Compl. ¶17, p. 6. However, "control" cannot be established based merely on Biaggi's position within a company. See In re

Livent, Inc. Sec. Litig., 78 F.Supp.2d at 221 ("Officer or director status alone does not constitute control".) Rubinstein v. Skyteller, Inc., 48 F.Supp. 2d at 315, 323 (SDNY 1999) (allegation that defendant is Treasurer and/or Chief Financial Officer of the company is insufficient to establish control). As noted above, plaintiffs must present factual allegations suggestive of actual control by Biaggi over W.Holdings with respect to the transactions at issue. See Wallace v. Buttar, Nos. 02 Civ. 4297, 4286, 2003 WL 103019, at 7 (SDNY Jan. 14, 2003) (the power to direct is not enough – actual control over the transaction is required) (citations omitted); In re Blech Sec. Litig., 961 F.Supp. at 586; (dismissing control claim where actual control was not present); Ross v. Bolton, No. 86 Civ. 8244, 1989 WL 80428, at 3 (SDNY Apr. 4, 1989) ("to incur controlling person liability a defendant must possess 'actual control over the transactions in question'") (citations omitted). Plaintiffs' baseless assumptions and unwarranted deductions regarding the responsibilities and authority attendant to Biaggi's titular status at Westernbank are insufficient to establish the requisite control.

Also, the Amended Complaint does not even attempt to state a claim against WHI for violation of Section 20(a). In the absence of such a claim against WHI their claims against Biaggi and the other individual defendants, as alleged control persons, cannot be sustained.

Biaggi also filed an amended cross claim against W Holding Company Inc., Westernbank Puerto Rico and the natural persons who are named defendants in the complaint, and a third party complaint against certain persons who were members of the Senior Credit Committee of the Business Credit Division of Westernbank during the class period.

### III  LIST OF POSSIBLE FACT WITNESSES

Biaggi will provide a list of fact witnesses at the conclusion of Discovery. However, at this stage, Biaggi has identified the following individuals as possible fact witnesses:

Ileana García – has knowledge about the Business Credit Division controls and procedures, the hiring of Mike Vazquez and the authorities conferred to him.

Fredeswinda García- has knowledge about the Business Credit Division controls and procedures, the hiring of Mike Vazquez and the authorities conferred to him.

Cesar Ruiz - has knowledge about the Business Credit Division controls and procedures, the hiring of Mike Vazquez and the authorities conferred to him, and Board of Directors' supervision of Business Credit division. Interview and reports of Mr. Mike Vazquez at Audit Committee meetings of the Company's Board of Directors regarding operations of Business Credit division.

Alfredo Perez - Interview and reports of Mr. Mike Vazquez at Audit Committee meetings of the meetings of the Company's Board of Directors regarding operations of Business Credit division.

William Vidal - (has also knowledge of the matters above stated) The decisions, actions and measures taken while heading the Business Credit division together with Mr. Stipes during the period when Mr. Mike Vazquez was deprived of such duties and control –prior to Mr. Vazquez's termination—.

Frank C. Stipes - (has also knowledge of the matters above stated) The decisions, actions and measures taken while heading the Business Credit division together with Mr. Stipes during the period when Mr. Mike Vazquez was deprived of such duties and control –prior to Mr. Vazquez's termination—. He also has knowledge as to the establishment

and organization of the Business Credit division of the Company including Mr. Vazquez's hiring, employment agreement, and reporting structure.

Mike Vazquez - (has also knowledge of the matters above stated) The establishment and organization of the Business Credit division of the Company including Mr. Vazquez's hiring, employment agreement, and reporting structure. The growth targets established yearly for the Business Credit division.

Juan C. Frontera - (has also knowledge of the matters above stated) His participation in Busines Credit division credit committees and the reporting of this division to the Board of Directors, and the investigations ordered, or carried on, by him and or the Board of Directors of the Company regarding the Business Credit division and/or the Inyx loan.

Hector Del Rio - (has also knowledge of the matters above stated) His participation in Business Credit division, credit committees and the reporting of this division to the Board of Directors, and the investigations ordered, or carried on, by him and or the Board of Directors of the Company regarding the Business Credit division and/or the Inyx loan.

Cornelius Tamboer - His participation in Business Credit division credit committees and the reporting of this division to the Board of Directors, and the investigations ordered, or carried on, by him and or the Board of Directors of the Company regarding the Business Credit division and/or the Inyx loan.

Norberto Rivera – has knowledge about the steps taken at Westernbank in order to obtain information about the Business Credit division, its operations and procedures.

Vixon Baez - has knowledge about the steps taken at Westernbank in order to obtain information about the Business Credit division, its operations and procedures.

Eric Santiago - has knowledge about the steps taken at Westernbank in order to obtain information about the Business Credit division, its operations and procedures.

Ramon Santiago – has knowledge about the internal process and operations of the Business Credit division, reporting structure and administration therein, including the Inyx loan.

Rene Lopez - has knowledge about the steps taken at Westernbank in order to obtain information about the Business Credit division, its operations and procedures.

Rafael Somoza - has knowledge about the steps taken at Westernbank in order to obtain information about the Business Credit division, its operations and procedures.

Adrian Hilera - has knowledge about the steps taken at Westernbank in order to obtain information about the Business Credit division, its operations and procedures..

Miguel Aran – has knowledge about the loan review realized of the Business Credit division portfolio.

José López - has knowledge about the steps taken at Westernbank in order to obtain information about the Business Credit division, its operations and procedures..

Biaggi reserves the right to amend the above list subject to the discovery at the captioned case. Biaggi also includes herein any of the possible witnesses identified by the plaintiffs and the cross-defendants and third party defendants.

### V.   LIST OF EXPERT WITNESS

Mr. Biaggi has engaged expert witness Tom Myers and will declare, without limitation, as to the matters covered in the attached statement. See **Exhibit 1.**

## VI      LIST OF DOCUMENTARY EVIDENCE

Mr. Biaggi has informally requested cross-defendants and third party defendants the production of several documents, which have not been produced. Upon request of said defendants at the initial scheduling conference, Mr. Biaggi will notify a formal discovery request for production of documents. Thus, Biaggi is in no position to announce at this stage his documentary evidence, and will announce it as soon as the discovery request is produced.

## VII     DISCOVERY TO BE CONDUCTED BY PARTIES

Biaggi will conduct depositions, interrogatories and request for production of documents.

## VIII    TRIAL BY MAGISTRATE JUDGE

Biaggi hereby consents to trial by magistrate judge.

## IX      OTHER MATTERS

None at this time.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 29th day of December, 2009.

**I HEREBY CERTIFY**:  that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

```
                                              s/ Harry Anduze Montaño
                                              USDC No. 114910
                                              Attorney for codefendant
                                              1454 Fernández Juncos Avenue
                                              San Juan PR  00909
                                              Tel. (787) 723-7171
                                              Fax  (787) 723-7278
                                              E-mail handuze@microjuris.com
```

                                        s/ José A. Morales Boscio  
                                        USDC No. 220614  
                                        Attorney for codefendant  
                                        1454 Fernández Juncos Avenue  
                                        San Juan PR  00909  
                                        Tel. (787) 723-7171  
                                        Fax  (787) 723-7278  
                                        E-mail  jmb@microjuris.com

lvf

G/JAM/Motions/1811-MOTION IN OPPOSISION OF DEFENDANTS MOTION OF SUMMARY JUDGEMENT (Tomas Alberty).doc