UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| SAMUEL HILDENBRAND On Behalf of Himself and All Others Similarly Situated, | : | Civil Action No. 07-1886(JAG) **(Consolidated)** |
| | : | |
| Plaintiff, | : | CLASS ACTION |
| | : | |
| vs. | : | LEAD PLAINTIFF'S MOTION AND MEMORANDUM OF LAW FOR FINAL |
| | : | APPROVAL OF CLASS ACTION |
| W HOLDING COMPANY, INC., et al., | : | SETTLEMENT AND PLAN OF |
| | : | DISTRIBUTION OF SETTLEMENT |
| Defendants. | : | PROCEEDS AND FINAL CERTIFICATION |
| | x | OF THE CLASS FOR SETTLEMENT PURPOSES |

833265_1

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ...................................................................1

II.    THE STANDARD FOR JUDICIAL APPROVAL OF CLASS ACTION
SETTLEMENTS UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(e) ...............3

III.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ...........................4

      A.     The Parties Entered into the Settlement Following Protracted Arm's-
Length Negotiations and Extensive Litigation .......................................4

      B.     The Settlement Represents an Excellent Recovery for the Class ...........................5

      C.     Lead Counsel Recommend Approval of the Settlement........................................5

      D.     The Class Faced Substantial Risks in Establishing Liability and Damages ...........6

      E.     The Complexity, Expense, and Likely Duration of the Litigation .........................7

      F.     The Favorable Reaction of the Class Supports Approval.......................................8

IV.   FINAL CLASS CERTIFICATION FOR PURPOSES OF THE PROPOSED
SETTLEMENT IS APPROPRIATE ...................................................................9

      A.     The Class Is Sufficiently Numerous ...................................................10

      B.     Common Questions of Law or Fact Exist.............................................10

      C.     Lead Plaintiff's Claims Are Typical of Those of the Class ...................................11

      D.     Lead Plaintiff Is an Adequate Class Representative .............................................11

      E.     The Proposed Class Satisfies Rule 23(b)(3) .......................................12

            1.     Common Questions of Law and Fact Predominate Over Individual
Questions...............................................................................12

            2.     A Class Action Is Superior to Other Available Methods for
Resolving This Controversy ...................................................13

V.    THE PLAN OF DISTRIBUTION IS FAIR, REASONABLE, AND ADEQUATE
AND SHOULD BE APPROVED ...................................................................13

VI.   CONCLUSION........................................................................................14

833265_1

# TABLE OF AUTHORITIES

Page

**CASES**

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)...............................................................9, 12, 13

*Beecher v. Able*,
    575 F.2d 1010 (2d Cir. 1978)...............................................................14

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ...............................................................11

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981)...............................................................3

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ...............................................................13

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)...............................................................14

*Durrett v. Hous. Auth. of Providence*,
    896 F.2d 600 (1st Cir. 1990) ...............................................................3

*In re Chicken Antitrust Litig. Am. Poultry*,
    669 F.2d 228 (5th Cir. 1982) ...............................................................14

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003)...............................................................4

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................14

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
    142 F.R.D. 588 (S.D.N.Y. 1992) ...............................................................14

*In re Lease Oil Antitrust Litig.*,
    186 F.R.D. 403 (S.D. Tex. 1999)...............................................................9

*In re Lupron(R) Mktg. & Sales Practices Litig.*,
    228 F.R.D. 75 (D. Mass. 2005)...............................................................9

*In re Puerto Rican Cabotage Antitrust Litig.*,
    269 F.R.D. 125 (D.P.R. 2010) ...............................................................10

- ii -

**Page**

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005)........................................................................9, 10, 11, 13

*In re Viatron Computer Sys. Corp. Litig.*,
614 F.2d 11 (1st Cir. 1980).............................................................................................3

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub. nom.*
*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005).............................................................................................14

*In re Volkswagen & Audi Warranty Extension Litig.*,
273 F.R.D. 349 (D. Mass. 2011)..........................................................................10, 11, 12, 13

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005).............................................................................13

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
671 F. Supp. 819 (D. Mass. 1987) ...............................................................................4, 8

*McLaughlin v. Liberty Mut. Ins. Co.*,
224 F.R.D. 304 (D. Mass. 2004).....................................................................................10

*Payne v. Goodyear Tire & Rubber Co.*,
216 F.R.D. 21 (D. Mass. 2003).................................................................................10, 11

*Rodrigues v. Members Mortg. Co.*,
226 F.R.D. 147 (D. Mass. 2005).....................................................................................11

*Tardiff v. Knox County*,
365 F.3d 1 (1st Cir. 2004)................................................................................................10

*Voss v. Patrick*,
592 F.3d 242 (1st Cir. 2010)...........................................................................................3

*White v. NFL*,
822 F. Supp. 1389 (D. Minn. 1993)...............................................................................14

833265_1

Page

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23 ..................................................................................................................9, 13
    Rule 23(a).........................................................................................................3, 9, 12
    Rule 23(a)(1) ............................................................................................................10
    Rule 23(a)(2) .....................................................................................................10, 11
    Rule 23(a)(3) ............................................................................................................11
    Rule 23(a)(4) ............................................................................................................11
    Rule 23(b) ..................................................................................................................9
    Rule 23(b)(3)......................................................................................................3, 12
    Rule 23(b)(3)(D) ......................................................................................................13
    Rule 23(e)............................................................................................................3, 6

17 C.F.R.
    §240.10b-5 ...............................................................................................................10

**SECONDARY AUTHORITY**

Ellen M. Ryan, Laura E. Simmons, *Securities Class Action Settlements,*
*2012 Review and Analysis* (Cornerstone Research 2013)................................................5

**TO:**   **THE HONORABLE COURT**

**NOW COMES** Lead Plaintiff Félix Rivera who respectfully prays and states:

## I.   PRELIMINARY STATEMENT[1]

Lead Plaintiff is pleased to submit to the Court a settlement in this Action for $8,750,000, plus interest, for the benefit of the Class (the "Settlement").   Lead Plaintiff believes that the Settlement represents a very good result and creates an outstanding recovery for the Class.   As detailed in the accompanying Rothman Declaration and below, the Settlement is the result of hard-fought litigation, and arm's-length negotiations by well-informed counsel, including several mediation sessions.

The Settlement represents the culmination of over five years of litigation concerning a series of false and misleading statements in connection with certain loans and lines of credit issued to Inyx, Inc. and its subsidiaries (collectively, "Inyx"), resulting in the defendants' write down of approximately $105 million in loans to Inyx and defendants' admission that their previously certified financial statements for 2006 and 2007 would have to be restated.   Rothman Decl., ¶15.   In preparing and litigating their case, Lead Plaintiff and Lead Counsel (i) conducted an extensive independent investigation; (ii) successfully opposed defendants' motions to dismiss; (iii) successfully opposed defendants' motion for reconsideration or, in the alternative, for certification for interlocutory appeal; (iv) successfully opposed a motion to stay; (v) successfully opposed a motion to bifurcate

---

[1]   An overview of Lead Plaintiff's claims, the substantial efforts by Lead Counsel, and the negotiations leading to this Settlement are detailed in the accompanying Declaration of Robert M. Rothman in Support of (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Distribution of Settlement Proceeds and Final Certification of the Class for Settlement Purposes; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Lead Plaintiff's Time and Expenses ("Rothman Decl."), which is incorporated herein by reference.

833265_1

class certification discovery from merits discovery; (vi) successfully opposed a motion to dismiss for failure to exhaust administrative remedies; (vii) opposed a motion for judgment on the pleadings; (viii) filed a motion for class certification; (ix) opposed defendants' motions for summary judgment; and (x) consulted with experts in market efficiency, materiality, damages, and banking matters. Rothman Decl., ¶8.

This case was carefully investigated and vigorously litigated since its commencement in 2007.  Lead Plaintiff and Lead Counsel encountered novel and complicated hurdles during the course of litigation which makes this recovery even more impressive.  In addition to the normal litigation activities required to litigate a complex securities class action case such as this one, Lead Plaintiff was faced with the task of obtaining discovery from the FDIC once it took over Westernbank, W Holding's then wholly-owned commercial bank subsidiary.  These discovery tasks included not only obtaining documents from the FDIC, but also analyzing those documents. Rothman Decl., ¶¶53-55.

Despite Lead Plaintiff's confidence in the successful outcome of his allegations at summary judgment and trial, the parties vigorously disagreed on Lead Plaintiff's ability to establish defendants' improper accounting or scienter, the materiality of the alleged misstatements, loss causation, and damages.  Accordingly, the risk associated with continuing the litigation was real and great.  As detailed herein and in the Rothman Declaration, the Settlement constitutes an outstanding result for the members of the Class and meets all the criteria required for approval.  According to Lead Plaintiff's damages expert, the $8,750,000 Settlement represents a recovery for the benefit of the Class of more than 15% of the estimated damages that could reasonably be recovered at trial. Rothman Decl., ¶93.  Moreover, the Settlement provides a guaranteed recovery and avoids the risk,

delay, uncertainty, and expense of further litigation.  To date, Lead Plaintiff has not received any objections to the Settlement, and no requests for exclusion have been received.

Lead Counsel also believe that the Settlement described herein confers a substantial benefit upon the Class and is fair, reasonable, and adequate.  Lead Plaintiff and Lead Counsel have concluded that it is in the best interest of Lead Plaintiff and the Class to settle the Action on the terms described herein and, accordingly, respectfully request that the Court grant final approval of this Settlement.  In addition, the proposed Class meets all of the elements of Federal Rules of Civil Procedure 23(a) and (b)(3); therefore, the Court should grant final certification of the Class.  Finally, the Plan of Distribution, which was developed with the assistance of Lead Plaintiff's professional damages consultant, is a fair and reasonable method for distributing the Net Settlement Fund to Class Members, and should also be approved by the Court.

## II.   THE STANDARD FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(e)

It is well-established that courts favor settlements of lawsuits over continued litigation.  *See, e.g.*, *Durrett v. Hous. Auth. of  Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *In re Viatron Computer Sys. Corp. Litig.*, 614 F.2d 11, 15 (1st Cir. 1980).

Before granting final approval of a proposed class action settlement, the court must find that the settlement is "fair, reasonable, and adequate."  *See* Fed. R. Civ. P. 23(e); *Voss v. Patrick*, 592 F.3d 242, 251 (1st Cir. 2010).  Courts "enjoy great discretion to 'balance [a settlement's] benefits and costs' and apply this general standard."  *Id.*[2]  In conducting its evaluation, however, the court should not decide the merits of the case.  *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

---

[2]      Citations are omitted and emphasis is added, unless otherwise noted.

Among the factors traditionally considered in evaluating the fairness of a class action settlement are the following: (i) whether the settlement negotiations were at arm's length; (ii) the stage of the litigation and the amount of discovery completed; (iii) the amount of the settlement compared to the amount at issue in the case; (iv) plaintiff's likelihood of succeeding on the merits and recovering damages on the claims; (v) class counsel's recommendations; and (vi) the nature and merit of any objections. *See, e.g.*, *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822-23 (D. Mass. 1987).

In this case, an examination of the foregoing factors demonstrates that the proposed Settlement is fair, reasonable, and adequate to the Class and should be approved by the Court.

## III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    The Parties Entered into the Settlement Following Protracted Arm's-Length Negotiations and Extensive Litigation

At the time of the Settlement, both Lead Plaintiff and defendants were in a good position to understand the strengths and weaknesses of their respective positions.  Lead Counsel completed fact and expert discovery, thoroughly researched the law pertinent to the claims and defenses asserted, and the parties had completed summary judgment briefing.  Rothman Decl., ¶¶5-6, 8.  In addition, the parties' settlement negotiations included three formal mediation sessions presided over by two separate mediators, one of whom was a retired United States District Judge and the other of whom is a highly respected mediator with substantial experience in mediation of securities fraud lawsuits. Rothman Decl., ¶8.  Following the last mediation session, the mediator made a mediator's proposal that the parties settle the case for $8.75 million.  After careful consideration and armed with the knowledge obtained through extensive litigation and discovery, Lead Plaintiff accepted the mediator's proposal.

- 4 -

Thus, Lead Plaintiff is satisfied that the Settlement was reached after lengthy investigation, document review, intense discovery, motion practice, and research to enable him and his counsel to knowledgeably settle the case.

**B.    The Settlement Represents an Excellent Recovery for the Class**

Under the terms of the Revised Settlement Agreement dated February 13, 2013 ("Stipulation"), the Settlement consists of $8,750,000, plus interest, for the benefit of the Class.[3]  In light of the risks, costs, and delays that would result from proceeding to trial and appeal of any trial verdict, as discussed below, the Settlement provides a reasonable recovery for the members of the Class.  According to Lead Plaintiff's damages expert, the $8.75 million Settlement represents a recovery for the benefit of the Class of more than 15% of the estimated damages that could reasonably be established at trial, which far exceeds the average recovery in recent securities class action litigation.[4]

**C.    Lead Counsel Recommend Approval of the Settlement**

Lead Counsel each have extensive experience in litigating class actions and have negotiated scores of class action settlements that have been approved by courts in this Circuit and throughout the country.  Lead Counsel negotiated the Settlement with the benefit of the extensive analysis of the applicable law and the relevant facts, and only after considering the strengths and weaknesses of the claims asserted in the Action and the significant benefits to the Class in light of the risks, the delay,

---

[3]      All capitalized terms not defined herein have the same meanings set forth in the Stipulation.

[4]      *See, e.g.*, Ellen M. Ryan, Laura E. Simmons, *Securities Class Action Settlements, 2012 Review and Analysis*, at 8 (Cornerstone Research 2013) (settlements as a percentage of "estimated damages" averaged 1.8% in 2012).

- 5 -

and the additional expense of continuing this complex litigation.  It is the informed judgment of Lead Counsel that the Settlement fully satisfies the requirement of Rule 23(e).

### D.     The Class Faced Substantial Risks in Establishing Liability and Damages

The Class faced significant risks in establishing liability and damages.  While Lead Plaintiff believes that his case is strong and that he would prevail at summary judgment and trial, he recognizes that he faces formidable obstacles to recovery with respect to both liability and damages.

Throughout this litigation, defendants adamantly denied liability and consistently maintained that they would continue to claim that Lead Plaintiff would be unable to present evidence demonstrating that defendants acted with the scienter required by the PSLRA.  Rothman Decl., ¶112.  At trial, defendants would attempt to convince the jury that they believed the Company's controls were effective throughout the Class Period.  *Id.*  The defendants would further argue to the jury that the restatement was a legally insufficient basis upon which to infer scienter.  *Id.*  Rather, defendants would claim that the clean audit opinion they received from Deloitte & Touche and FDIC's approval of the Company's internal controls would negate any inference of scienter.  *Id.*

At trial, defendants would also try to rebut Lead Plaintiff's evidence demonstrating that defendants made false statements concerning the Inyx loans, the Company's loan losses, and representations concerning the Compliance with GAAP.  *Id.*, ¶113.  Defendants would also contend at trial that certain statements concerning the strength of the Company's loan portfolio were not actionable.  *Id.*, ¶114.  Finally, at trial, defendants would advise the jury how they were victims of a massive fraud by Inyx and its founder, which destroyed Westernbank – a bank that defendant Stipes' family spent generations building.  *Id.*, ¶115.

Finally, even if Lead Plaintiff could establish falsity, materiality, and scienter, there were substantial hurdles with respect to establishing loss causation and damages.  At trial, defendants

- 6 -

would contend that any declines in the Company's stock price were the result of the massive economic downturn that impacted all banks during the Class Period.  Rothman Decl., ¶116.  In addition, defendants would dispute Lead Plaintiff's damage calculation.  According to defendants, Lead Plaintiff would be unable to disaggregate any damages caused by the alleged fraud from other factors, such as the contemporaneous economic downturn.  *Id.*, ¶117.  Defendants would further challenge the methodology Lead Plaintiff used to calculate damages.  *Id.*  If defendants had succeeded on any of these defenses at summary judgment or trial, it would have eliminated any recovery for the Class.  Proving these elements would require expert testimony, and would undoubtedly be reduced to a "battle of experts."  There is no guarantee that the fact finder would accept the opinions of Lead Plaintiff's experts, thereby materially reducing the damages suffered by the Class.

Moreover, there was the very real prospect of not getting paid even after obtaining a judgment.  The Company had one operating subsidiary – Westernbank – which was seized by the FDIC.  Without an operating company as a defendant, any judgment obtained most likely would remain largely unsatisfied.

The Settlement provides a guaranteed recovery for each member of the Class and avoids the risks of continued litigation, thus militating in favor of final approval of the Settlement.

### E.      The Complexity, Expense, and Likely Duration of the Litigation

As explained above and in the Rothman Declaration, this Action was replete with complexity and uncertainty.  A trial would be prolonged and expensive, and with no guarantee of recovery.  Moreover, whatever the outcome at trial, there would inevitably have been post-trial motions and an appeal.  Further, as explained above, the risk of obtaining a recovery against defendants increased

- 7 -

833265_1

substantially when the FDIC seized Westernbank.  Rothman Decl., ¶121.  The uncertainty, expense, and likely duration of the case, through trial and appeals, also favor approval of the Settlement.

###    F.    The Favorable Reaction of the Class Supports Approval

The highly favorable reaction of the members of the Class to the Settlement also supports its approval.  Pursuant to the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), the Claims Administrator, under the direction of Lead Counsel, caused the Notice to be mailed, starting on March 15, 2013, to a total of 16,727 potential Class Members.  *See* paragraphs 3-10 of the Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Proposed Settlement, Motion for Attorneys' Fees and Expenses and Settlement Fairness Hearing and the Proof of Claim and Release Form, B) Publication of the Summary Notice, and C) Internet Posting ("Sylvester Decl."), submitted herewith.  Pursuant to the Preliminary Approval Order, the Claims Administrator also caused the Summary Notice to be published in *Investor's Business Daily* and transmitted over the *Business Wire* on March 19, 2013.  *Id.*, ¶13.

To date, no objections to the Settlement or Lead Counsel's application for an award of attorneys' fees and expenses have been served on Lead Counsel, and no potential members of the Class have submitted requests for exclusion from the Settlement.  The Class Members' uniformly positive reaction to the proposed Settlement also supports approval of the Settlement.  *See, e.g.*, *M. Berenson*, 671 F. Supp. at 824.

## IV.   FINAL CLASS CERTIFICATION FOR PURPOSES OF THE PROPOSED SETTLEMENT IS APPROPRIATE

The Court's Preliminary Approval Order preliminarily certified for settlement purposes the following Class: "all Persons who purchased the publicly traded securities of W Holding Company, Inc. ("W Holding") between April 24, 2006 and June 26, 2007, inclusive."[5]

If all of Rule 23's requirements are met, a class may be certified for purposes of a settlement. *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 68 (D. Mass. 2005). "[A] district court must first find that a class satisfies the requirements of Rule 23, regardless of whether it is certifying the class for trial or for settlement."  *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 418 (S.D. Tex. 1999); *see also Amchem*, 521 U.S. at 621 ("The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, we emphasize, are not impractical impediments – checks shorn of utility – in the settlement class context.").  However, "the district court may take the proposed settlement into consideration when examining the question of certification.  *Amchem*, [521 U.S. at 620-21]. . . .  [Additionally], 'a district court [determining whether to certify a class for settlement purposes only] need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.'" *Lease Oil*, 186 F.R.D. at 418 (quoting *Amchem*, 521 U.S. at 620-21).  Moreover, "the law favors class action settlements." *In re Lupron(R) Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005).

---

[5]    Excluded from the Class are Persons or entities who submit valid and timely requests for exclusion from the Class and Defendants, members of the immediate family of any such Defendant, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has or had a controlling interest during the Class Period, the officers and directors of any Defendant during the Class Period, and legal representatives, agents, executors, heirs, successors or assigns of any such excluded Person.

The Class here easily satisfies all of Rule 23's requirements and final certification of the Class should be granted.  *See, e.g.*, *Tardiff v. Knox County*, 365 F.3d 1, 4 (1st Cir. 2004).

### A.      The Class Is Sufficiently Numerous

For a class action to be appropriate, the proposed class must be so numerous that joinder of all members is "impracticable."  Fed. R. Civ. P. 23(a)(1).  There is no fixed number of class members which either compels or precludes the certification; classes consisting of 40 members generally are sufficient to establish numerosity.  *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 307 (D. Mass. 2004).  District courts "'may draw reasonable inferences from the facts presented to find the requisite numerosity.'"  *In re Volkswagen & Audi Warranty Extension Litig.*, 273 F.R.D. 349, 352 (D. Mass. 2011).  Here, as the Sylvester Declaration sets forth, over 16,700 individual Notices were sent to potential Class Members throughout the country.  Moreover, Lead Plaintiff's damages consultant estimates that tens of millions of shares of W Holding securities purchased by Class Members may have been affected by the alleged conduct at issue in the Action.  Therefore, the threshold for a presumption of impracticability of joinder is thus easily exceeded.

### B.      Common Questions of Law or Fact Exist

The commonality requirement of Rule 23(a)(2) is satisfied when common questions of law or fact are present.  *See Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003).  It is not necessary that all issues of fact and law be common.  *Volkswagen*, 273 F.R.D. at 352; *Relafen*, 231 F.R.D. at 69.  In fact, only a single common question of fact or law is necessary to meet this requirement.  *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 131 (D.P.R. 2010). Here, the Complaint spells out a "common course of conduct," the hallmark of Rule 10b-5 securities class actions.  Indeed, where, as here, a class of stock purchasers is defrauded over a period of time by similar misrepresentations due to defendants' common course of conduct, cases are regularly

certified. *See, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 904-05 (9th Cir. 1975). Rule 23(a)(2) is therefore satisfied.

### C.   Lead Plaintiff's Claims Are Typical of Those of the Class

Lead Plaintiff's claims are typical of Class Members' claims. Under Rule 23(a)(3), claims are typical where "'named plaintiffs' claims arise from the same course of conduct that gave rise to the claims of the absent [class] members.'" *Rodrigues v. Members Mortg. Co.*, 226 F.R.D. 147, 151 (D. Mass. 2005). *See also Volkswagen*, 273 F.R.D. at 352; *Payne*, 216 F.R.D. at 26. "For purposes of demonstrating typicality, '[a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Relafen*, 231 F.R.D. at 69.

In this case, the typicality requirement is met. There is no conflict or antagonism between Lead Plaintiff's interests and those of the Class. Like all of the Class Members, Lead Plaintiff purchased W Holding securities at prices artificially inflated by defendants' materially false and misleading statements or omissions, without knowledge of material facts defendants either knew or concealed.

### D.   Lead Plaintiff Is an Adequate Class Representative

Under Rule 23(a)(4), plaintiffs must also "fairly and adequately protect the interests of the class." Adequacy "'requires that Plaintiff demonstrate that [his] interests will not conflict with those of class members and that [his] counsel is qualified, experienced and able to vigorously conduct the proposed litigation.'" *Rodrigues*, 226 F.R.D. at 151. *See also Volkswagen*, 273 F.R.D. at 353. Only a conflict that goes to the very subject matter of the litigation will defeat a finding of adequacy.

The adequacy test is met here. The Lead Plaintiff's interests are co-extensive, do not conflict with the Class Members' interests, and are typical of the claims of the Class. Substantial common

- 11 -

questions of fact and law exist and the Lead Plaintiff's interests are aligned with those of the Class. Lead Plaintiff retained experienced counsel to prosecute this case, and participated in all aspects of the litigation.  Lead Counsel possess extensive experience in the area of securities litigation and are actively engaged in complex federal civil litigation, particularly the litigation of securities class actions.  *See* Rothman Decl., ¶107.

>        **E.        The Proposed Class Satisfies Rule 23(b)(3)**

Rule 23(b)(3) authorizes certification where, in addition to the prerequisites of Rule 23(a), common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication.  *Amchem*, 521 U.S. at 591-94; *Volkswagen*, 273 F.R.D. at 353.  This case easily meets Rule 23(b)(3)'s requirements.

>        **1.        Common Questions of Law and Fact Predominate Over**
>                  **Individual Questions**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  "The Rule 23(b)(3) predominance inquiry is satisfied 'unless it is clear that individual issues will overwhelm the common questions and render the class action valueless.'" *Volkswagen*, 273 F.R.D. at 353.  As discussed above, there are a host of common questions of law and fact as to the members of the Class which Lead Plaintiff seeks to represent.  These questions clearly predominate over individual questions because defendants' alleged conduct affected all Class Members in the same manner – by artificially inflating the price of W Holding securities.  "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625.  The First Circuit does not require an "entire universe" of common issues, but does require a

"'sufficient constellation'" of them. *Relafen*, 231 F.R.D. at 70.[6]   As described above, this requirement is clearly met.

> ### 2.    A Class Action Is Superior to Other Available Methods for Resolving This Controversy

The requirement of superiority "ensures that resolution by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Relafen*, 231 F.R.D. at 70 (citing *Amchem*, 521 U.S. at 615).  As further explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." 521 U.S. at 620.  Any management problems that may have existed here are eliminated by the Settlement.  Therefore, because each of the other elements of Rule 23 are satisfied, a class action is the superior method of adjudicating the relatively small claims of Class Members.

## V.    THE PLAN OF DISTRIBUTION IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED

Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable, and adequate.  *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005).  District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably."

---

[6]    The fact that individual Class Members' damages may vary or that individual Class Members may not recover does not defeat predominance. *Volkswagen*, 273 F.R.D. at 354.

*Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003), *aff'd sub. nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005).   An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.  *White v. NFL*, 822 F. Supp. 1389, 1420-24 (D. Minn. 1993); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

Here, the Plan of Distribution was developed by Lead Counsel in consultation with their professional damages consultant and reflects the requirements for establishing damages promulgated by *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) and complies with the PSLRA.  The Plan of Distribution calculates and allocates damages consistent with Lead Plaintiff's damage analyses, and also weighs the strength of the various claims at different times during the Class Period.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("A reasonable plan may consider the relative strength and values of different categories of claims.").  The Plan of Distribution is set forth in the Notice and summarized in ¶¶123-126 of the Rothman Declaration. Lead Plaintiff, therefore, respectfully requests that the Court approve the Plan of Distribution as submitted.

## VI.    CONCLUSION

For the reasons set forth above, Lead Plaintiff respectfully requests that this Court approve this outstanding Settlement as fair, reasonable, and adequate, enter the proposed Final Judgment

833265_1

certifying the Class, and approve the Plan of Distribution of settlement proceeds as fair, reasonable, and adequate.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 19th day of April, 2013.

I hereby certify that on this date I presented *Lead Plaintiff's Motion and Memorandum of Law for Final Approval of Class Action Settlement and Plan of Distribution of Settlement Proceeds and Final Certification of the Class for Settlement Purposes* to the Clerk of the Court for filing and uploading to the Court's CM/ECF system, which will send electronic notification of such filing to all counsel of record.

s/ Andrés W. López
_____
ANDRÉS W. LÓPEZ

THE LAW OFFICES OF ANDRÉS W. LÓPEZ,
   P.S.C.
ANDRÉS W. LÓPEZ
USDC-PR #215311
902 Fernandez Juncos, Suite 3
San Juan, PR  00907
Telephone:  787/294-9508

QUETGLAS LAW OFFICES
ERIC M. QUETGLAS JORDAN
USDC-PR #202514
P.O. Box 16606
San Juan, PR  00908-6606
Telephone:  787/722-0635
787/725-3970 (fax)

Co-Liaison Counsel

833265_1

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER P. SEEFER
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

WHATLEY KALLAS, LLC
JOE R. WHATLEY, JR.
380 Madison Avenue, 23rd Floor
New York, NY  10017
Telephone:  212/447-7060
800/922-4851 (fax)

Co-Lead Counsel for Plaintiffs

- 16 -